I understand we have Ms. Christophe Moore, and we have Mr. Monteleone from the U.S. It looks like everybody is ready to go, so it's all yours, take the podium. May I please the court? Good morning, your honors. My name is Sarah Christophe. I'm counsel for Mrs. Menendez on appeal. Mrs. Menendez's appeal, which is actually fully briefed at this point, raises precisely the type of substantial question that warrants her release on bail pending the outcome of the appeal. So can you help me about what we review it for? Is there any role for clear error in our decision, or would you say that it's entirely de novo? Are there any factual questions? Your honor, I think that the ultimate question of whether there is a substantial question is reviewed de novo. There are some of the underlying factual findings by the court that the court can certainly look at under a clear error standard, but I think it is really a mixed standard, and the ultimate question of whether or not there is a substantial question is a de novo review of the court. So where do you view the factual findings that are relevant? I'm sorry? I'm sorry. In your view, what are those factual questions that are subsidiary to the substantial question finding? There were some financial, sorry, factual conclusions that we think are essentially clear error, right? And most importantly is Judge Stein, with all respect to Judge Stein, his position that Mrs. Menendez, through her counsel, was on notice that the government would not be calling her prior counsel. We think that is a clearly erroneous factual finding. We think that is precluded. That finding is precluded based first on parse. This court's decision in parse prevents the court from finding, you know, a defendant should have known something in an important context like this, a Sixth Amendment context, based on information that was, you know, equivocal to her lawyer. And a criminal defendant need not read tea leaves, right? A criminal defendant in the district court, no less, needs to be able to rely on the representations made. But that's more a legal issue. So one of them is this factual. What is this? Are there any other factual issues? I think that's this, that's the central factual issue that we believe is clearly erroneous factual finding. Or you have limited time, which is why I think we're jumping in quickly.  You would agree that the Sixth Amendment right is a limited one, is that correct? I mean, that's what our cases like Keynes and Jones say. There certainly are some limitations on the Sixth Amendment right. And there are circumstances where a defendant's right to counsel of choice can be impaired. The problem is... So what is the difference between the cases in which we have decided that a seriously conflicted attorney did not reach a constitutionally concerning impairment, and which ones are? So I think there are two really distinct differences between this case and the sort of standard disqualification review cases that this Court does. First, the disqualification process did not happen here. And so all of those cases where the Court takes it, the Second Circuit takes a deferential approach to the disqualification analysis that's done in a district court, like Jones, like Keynes, there is an extensive disqualification process that happens, a fact-finding process that happens, that the Second Circuit is looking at in a deferential manner. That process did not happen here. Because in what was a really extraordinary course of events, the government sort of stated that it was calling Mrs. Menendez's counsel as a witness against her unequivocally. And I think it is important to note, like, it is important to go through the chronology of those events, because it is hugely important. First, this was based on statements that Mrs. Menendez's counsel had made to the government in advocacy for her. Right? And that was number one. Well, you can instruct justice through advocacy, right? If your client gives you fake information and then you repeat it through advocacy, you have become the mouthpiece for a crime. There's certainly...  No, theoretically, I'm not saying that you need to concede that's what happened here. Yeah, I... So I'm not sure then what your point is. I don't, I don't, I don't quibble with your point. In other words, you don't get to get out from under an obstruction or witness tampering or some other criminal activity by saying, well, it was for advocacy purposes. You know, I killed the witness, but because I didn't want them to testify at the trial against my client. Of course not. Of course not. And it's not the same as making, filing a motion to eliminate or preclude the testimony. So that point doesn't seem to get you anywhere. Well, I think it's the series of events that matters, right? And so at that initial attorney proffer, the government did not have any witness there. So they knew from the beginning. Well, they don't have to have a witness there. Right. That's their choice, but they knew from the beginning. Why don't they have a witness there? There were several AUSAs present, weren't there? There are eight AUSAs present. So why couldn't one of them be a witness? They're not all participating in the trial. Well, I, I, the government did not elect to make that choice. They decided that Mrs. Menendez's counsel should be the witness as to what happened at the meeting. Well, but he was a witness. They didn't decide he should be a witness. He was a witness. But they get to choose. But he was there. Whether they want to call him or not, he's now stuck in the middle by virtue of the alleged conduct of your client. Now, I don't even understand why we're talking about when the government decided to call or not, because until the trial's over, it ain't over. So you never know what's going to play out at a trial until the very end, right? Until you, in fact, until after the defense decides whether they're going to call witnesses or not and whether the government's going to put on a rebuttal case. So I guess I'm not sure even how we can make this assessment based on the sequence of events until we just look and say, well, by the end of the trial, the government had to make a call whether they're going to call this guy or not. Now, they may have been thinking early, I'm going to call. And then later said, no, no, let's try another way and hold him in reserve. I'd like to avoid that because it kind of puts a weird – then we'd have some other kind of Sixth Amendment claim injected into the trial. It's a cleaner trial not to call him. But they know that if they have to in the last urgency, they can. But if the trial ends and they say, okay, it turns out we don't have to, then – like, isn't that how every trial plays out? That potential witnesses have to stay on deck and at the ready to be called until everybody knows the entire lay of the land. Except I think there's some real fundamental differences in this case to sort of that scenario that you present, right? One is that that's not what happened here. So in a typical – You think that's not what happened. You think that the government turned off the part of their brain that said, maybe we have to call this guy at the beginning of the trial and said, no matter what happens, I will not call him under any circumstances? Is that what you're saying happened? No. I'm saying the disqualification proceedings that have to happen to disqualify an attorney for a criminal defendant are significant. And in the court – this Court sets out those proceedings in its disqualification decisions, right? There's an inquiry – Why didn't those proceedings happen? I mean, I can't speak for the district court, Your Honor, but the – I mean, the – didn't counsel withdraw, basically, confronted with this possibility of being a witness? Yeah. I mean, counsel – So why isn't that better for the government than even a very good effort by a judge to make fact findings and decide and then decide to disqualify a lawyer who is objecting and whose client is objecting to being disqualified? Here, the lawyer himself made that decision at some point, right? Right. Based on this unequivocal representation from the government that they were calling Mrs. Menendez as counsel.  But why doesn't that – I mean, I'm going to go back to Judge Nardini's question. On what basis do we know that the government made, at some point, a decision that they were absolutely not going to call him? In your view, when did that decision take place and how do we know it took place? So, Your Honor, our point is that in the post-trial briefing on this issue before Judge Stein, the government essentially admitted we are – that there was a decreased likelihood that they were thinking of not calling Mr. — A decreased likelihood and thinking of not calling are something very different than a decision that was never communicated to the defense and should have been that this witness was not going to be called. And I'm trying to ferret out what is the evidence that there was a point at which the government absolutely decided not to call him and how do we know that that happened? We don't have that record because that record was not developed. But why would there even be such a thing? I guess here's my question. I mean, I've been through a lot of trials. I can't think of a world where anybody before trial says, I don't care how trial plays out. I know that under no circumstances will I call this witness. Everything is contingent in a trial. Surprise witnesses from one side or the other. So I guess I'm not understanding why you would even suppose that there would have been such a moment until the moment where the government closed, not even its cases, but closed its rebuttal case. Why would there ever be a decision? I mean, why would the defense have a decision? Would the defense have made some decisions in advance about who they would call or not until they closed their case? I think in these extraordinary circumstances, when you're interfering with a defendant's right to counsel of choice, the obligation is heightened, right? He was sitting there at the attorney proffer, or maybe it was on the phone. I can't remember if it was live or not. His participation was the thing that generated the conflict, because it made him a potential witness. That is what generated the conflict. Well, that's the government's argument, certainly. And we're not arguing. I'm not saying, hey, there was no – there was no – But why is that not a true statement? Well, first of all, whether or not that was – they didn't prove up those allegations, right? So those are allegations. They're not – they were not – they did not actually – The allegation is that he was not – you're saying there's only an allegation that he participated in the attorney proffer? No, I'm sorry. It would – we're going to the obstruction point. Like, they decided not to proceed. Let's say there's an alleged bank robbery. But we do know for sure that the lawyer is standing right next to his client as he walks up to the teller and hands him a note. He's a witness to what happened. Now, maybe he's going to testify that the note said, dear teller, I love you, or he'll testify, dear teller, I hand over the cash or I shoot you. But we know he's a witness. Right, but that's – That's not a question of, well, he's alleged to be a witness. He's a witness one way or the other. But that's not what happens here. And I think that the – It's functionally the same. His presence at the attorney proffer, where the attorney proffer gives rise to charges, is the same as him standing next to his client at the teller station at an alleged bank robbery. Maybe it's a robbery, maybe not. Maybe there was obstruction, maybe not. But he is a witness to the events that are alleged to be the crime. And it is his participation and his just being in the position of now he's a witness to it, one way or the other, that creates the inherent conflict. Now – I understand the point with regard to a bank robbery. I just don't think the course of events here is similar. And even if – And you're not really using the words to assume bad faith, right, that the government from the very beginning was hoping to manufacture a situation in which this would occur. And I don't know that we need to reach a question as to whether or not the Sixth Amendment would reach places of bad faith, but I think part of the thing that we're struggling with is why aren't you saying that you have evidence of bad faith if that's, in fact, what you're trying to imply and if it's something less than bad faith, what is it that leads to a Sixth Amendment concern? The course of events here, whether deliberate or inadvertent, violates her Sixth Amendment right. And so I am not – we did not argue that this was somehow, you know, concocted in order to, you know, throw Mrs. Menendez's very experienced and excellent counsel off the case. The point is the series of events, the course of events here effectively, you know, knocked out her counsel and did it in a way that this Court doesn't allow for. So the issue is there may have still been – like even – the government had a duty to correct the record, right? So once they knock out her counsel, correct the record. What was the correct – that's exactly what we're asking about. What is – what changed and how do we know it changed? At a certain – you're not saying that, I take it, from the beginning there never was an intent to call him, there never was any issue about the lawyer being a witness and the government just made it up to get rid of him, right? You're not saying that. We're not arguing that. You're saying that at a certain point something changed and the government made a definitive decision not to call him and they didn't tell the current counsel that that had happened. It doesn't – So when did that – I've asked it several times. When did that happen in your view? At what moment did that occur and how do you know that it occurred? So they admit in their post-trial briefing in the Rule 33 motion that they reconsidered that decision to call him immediately after – Excuse me, a moment ago you characterized that as that it was substantially less likely that they would call him, which is a very big difference. But even if – even if it was substantially less likely, right? Even if he was then a probable witness, not an actual witness, I think there was an obligation to go back to the court to have the proceedings for the court to do what it has to do, which is – I don't understand why. If there's a 100 percent chance they're going to call a witness at the beginning of the case and then you start going through your witness list, right? And you say, wow, this case is going really well. All the evidence came in really well. Of the 20 people on my witness list, I'm going to start cutting. Every trial happens. Instead of 10, let's go – probably more like 15. Okay, probably more like 10. And you're waiting until the last minute. And then when the 10th witness goes in and goes in really well, you're like, okay, I can cut the other 10. But you don't usually release them all until the very end because something weird could happen. And you hold on to the possibility something happens in the defense case that you might want to call them on rebuttal. Right. So you may be asymptotically approaching zero, but you're not at zero until you say the government rests. Right. But that's an – I don't disagree with your analysis of witnesses, right? And that is – the problem is there was a 10-month or almost a year time lapse, right, between the time that this Curcio proceeding happened and when the ultimate trial happened. And during that time period, the government has admitted in its post-trial briefing that it sort of was rethinking, right? I won't overstate the government's position, but they admitted in the post-trial briefing that they were rethinking whether or not to call Mrs. Menendez as counsel. And the issue at that – it does not – that does mean he may have still been – But he's no longer the counsel, though. And the other thing that – this is something else. That time lag is something that in some ways cuts the other way, right? Because at some point, if they're making a decision, suppose the day before the trial they made some definitive decision that they had learned some horrible fact about this lawyer that they could never put him on the stand for some reason. At that point, what good would it be to the defendant? The defendant's going to say, oh, I really like that lawyer. I want to bring him back after a year of not being involved with the case when I have another lawyer standing by ready to go to trial tomorrow? I mean, you know, it's – the whole scenario doesn't make a lot of sense to me. We had a situation where it became apparent that the lawyer was likely to be a witness – to put it – has been a witness to events that are going to come up at the trial, whether they're going to call him or they're not going to call him or they think they're going to call him or they might not call him or whatever. And then when apprised of that, the lawyer says, well, I guess I can't be there. I can't be there anymore. And then months later, they are in the process of rethinking what their trial strategy is. And this all amounts to – at what – I keep saying that. At what point does this violation happen? I mean, I think it's the series of events lead to the violation. And it can – it may well have been, right, that if the Court had looked at this and the government had – had met its duty of candor and said, hey, listen, Mrs. Menendez – Mrs. Menendez's new counsel, Judge Stein, this is a little bit fuzzier than we had thought. He is a potential witness. We're not sure if we're going to proceed with these particular allegations in the – in the indictment. It may still have been – Judge Stein may have looked at it, done the inquiry and may have still disqualified him. That is possible. But the problem is that process did not happen here because of the government's representation that they were calling him as a witness. So at that hearing, Mr. Montalioni or someone else from the U.S. Attorney's Office would be on the witness stand and would be grilled about what is the percentage likelihood of your calling that witness at this particular – at this particular moment, whatever it used to be, whatever it might become in two weeks. At this moment, what percentage would you put on? What would the – what odds would you give that you're going to call him? And that's what that hearing is going to be about? Well, the issue – I mean, the underlying disqualification hearings are the judges always have to make that type of analysis, right? If it's an issue of the – of the attorney being a possible witness against their own client, right? But that determination is, in my experience, usually a fairly objective one. It doesn't turn on the government's subjective thought process of is it going to be in our interest at what point to call this person, but has that person become a – objectively speaking, a witness to events that are of some significance to this trial? Except that the Sixth Amendment – the Sixth Amendment rights to counsel are so paramount that the judges are very – are very conscious of that, right? They're always trying to – if there's a possibility, if there's a way to limit so that the counsel can still represent the – Well, sure. If the government is willing to dismiss the counts that the lawyer allegedly witnessed, the conduct underlying that count, that would make a difference. Well, they effectively dismissed that conduct here. They didn't proceed on it, right? They didn't actually – they didn't prove anything up or turning – they – the obstruction count was based on several different factual predicates, one of which was the attorney proper. They offered no evidence at trial regarding the attorney proper. So essentially, they did – I mean, while not formally dismissing the obstruction count, count 18, they did, in fact, not proceed on the evidence regarding the attorney proper. Well, we have kept you considerably past the 5 minutes allocated. Thank you for your argument. Can I just ask one housekeeping matter? I think you mentioned that the appeal has been fully briefed. It has. Does that mean we have the opening – the response brief from the government and the reply? Yes, Your Honor. And has – have you asked for it to be expedited for oral argument? We have not. So do what you will, but the party should be aware that that, of course, is the kind of request that this Court regularly entertains. Obviously, we probably couldn't hear it until we resume after the summer break in whatever, late August or early September, but that is certainly a request that can be submitted. Thank you, Your Honor. Thank you. Why don't we hear from the government? May it please the Court, my name is Paul Montalioni. I represent the government on appeal and I represented the government below. Before – before I get to the way in which I think the governing legal standard really addresses the questions that the Court was asking about how can you know about likelihood and how are we supposed to parse the likelihood of being someone called by a witness? And, you know, the legal standard means that you actually don't need to get to those questions. I just want to point at one particularly glaring issue that, in our view, is really dispositive of this entire motion. Despite claiming in her argument that the district court clearly erred, that the government's notice to the defendant of its intentions with respect to whether or not to call Mr. Schertler as a witness was insufficient, the defendant put forward no basis for this Court to conclude that Judge Stein clearly erred in making this factual finding. She put forth three reasons in her opening – in her opening motion. We responded to each of them. Two of those reasons actually show exactly that the government had not made a firm decision not to call him a witness. Two of those reasons were we had reserved our rights and we had issued protective subpoenas because there was a live possibility in being called as a witness. So that clearly doesn't show any clear error in Judge Stein's finding, as a matter of fact, that we had adequately notified the defense of our intentions. Then the third is, I think, just a sort of a misunderstanding of the intended use of a particular exhibit. There was one exhibit we had marked on our exhibit list that she believed could only be authenticated if we called Mr. Schertler as a witness. But it turns out, and we cited this in our motion, we had authenticated it through a paralegal who received it in custodial testimony, but ultimately just decided not to offer it. So all those three reasons why she said it was clear error, we responded to. And in her reply, she gives literally no response, literally no counterargument to why none of her reasons show clear error, because, of course, there is no reason that Judge Stein clearly erred. He had presided over this trial and over this case for more than a year, and he was in the best position to know the basic facts that when one party communicates a witness list to the other party and a particular witness's name is not on the list, that is notice to the other party that the — that that person is not likely to be called as a witness. But the whole question of likelihood, and which I think led to a number of the Court's questions to counsel for the defendant, is really taken care of by the legal standard that's been developed since the Supreme Court's Wheat decision and has been applied in this Court's Curcio decisions and more recently in the Cain decision, which is we don't parse how likely a potential witness is to be called. The fact that they are a potential witness is a sufficient conflict to disqualify if there's not something that would take care of it like a stipulation. The Supreme Court in Wheat said these decisions have to be made sort of pretrial, through a glass, darkly, not with the wisdom of hindsight. You can't whipsaw the district court with assertions of error where either if you disqualify the attorney and get convicted, you could claim, well, I didn't have my counsel of choice, or if you don't disqualify the attorney and get convicted, you can claim, well, I didn't have unconflicted counsel. So what the Supreme Court prescribed and what this circuit implemented in Curcio is that you put the defendant to the choice in a hearing before trial when these potential conflicts could be remedied. And that entire process was followed. What the defendant said about the disqualification procedure not happening is not really correct. Every step of the procedure from a lengthy inquiry, narrative answers by the defendant, representation by independent counsel, time to reflect after the hearing, all of that happened. And all of that resulted in the defendant's decision, which was memorialized in sworn declarations from Mr. Schertler, and then a sworn declaration from the defendant herself. That was her decision that Mr. Schertler at that point was not the counsel of choice. She was properly under the law, put to the choice before trial, and she made her choice. And the law says we don't revisit it because that would throw proceedings into endless chaos. Now, the defense said, well, but the issue is Mr. Schertler withdrew before actually being disqualified. But that's what the law wants an ethical defense counsel to do. In the Locasio case, this Court said if an attorney will not perform his ethical duty, it's up to the courts to perform it for him. What the attorney is supposed to do when the record reveals that they cannot continue his counsel is exactly what Mr. Schertler did. That process worked. An additional point, which is an independent reason to deny the motion, is that, of course, Mr. Schertler remained an unsworn witness on the evidence that the government actually presented to the jury. So there was just literally no way that he could have returned as trial counsel. Before you sit down, I was hoping you would speak to the government's view as to venue and sufficiency of the evidence. Yes, Your Honor. The evidence of venue is, as we set forth in detail in the brief, is it is proved amply through in-person meetings in this district, which involves the provision of things of value in this district, which is essential conduct even for the substantive counts in the indictment. For the purposes of this motion, I should say, though, that none of that actually matters because even the conspiracy counts were purely preparatory acts in the district are sufficient. Those counts are sufficient to deny the motion, even if there was a problem on the substantive counts, which, of course, there isn't. And the obstruction counts, there is actually no challenge to venue whatsoever. And so even if, you know, and I think there's no way that this would happen under the law, but even if the merits panel concluded that there was no venue on the substantive or conspiracy corruption counts, the defendant still wouldn't be entitled to bail pending appeal here because the obstruction counts, which had a sentence far exceeding the appeal process duration, suffices to deny the motion. On sufficiency of the evidence of the corruption counts, this is a case where truly the evidence is not just sufficient, it is overwhelming. The defendant's only adverting is to official acts and claiming that the official acts were sort of nebulous. There's nothing nebulous about a text message saying, tell Will I am going to approve the – I am going to sign off this sale to Egypt today, and then listing the details of a $99 million tank ammunition sale. There's nothing concrete – I'm sorry, there's nothing nebulous about a – agreeing to a testifying witness bribe payer's request to stop and kill an investigation, a pending charged criminal case. There's nothing nebulous about promises to manipulate the ability to make recommendations to the President to influence the appointment for the U.S. attorney for the District of New Jersey. All of these are obviously official acts. And so, you know, they also couldn't get the defendant to the denial of the motion because the – to the grant of the motion because of the obstruction counts. But the evidence here is not just sufficient but overwhelming. Thank you. Thanks to both counsel for coming in and for your very helpful arguments. We will take the case under advisement.